UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
HARRY ROLAND,

                Plaintiff,

         - against -

CITY OF NEW YORK; JOHN DOE 1; JOHN
DOE 2; ALEXANDER; JOSETTE McCLEAN;
ERIC GONZALEZ; JOHN DOE 3; and
LORNA McALLISTER,

                Defendants.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
19-CV-2240 (PKC) (SMG)

PAMELA K. CHEN, United States District Judge:

On April 12, 2019, Plaintiff Harry Roland ("Plaintiff"), proceeding *pro se,* currently incarcerated at Upstate Correctional Facility, filed this civil action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights during his post-arrest detention and his state criminal trial resulting from his July 22, 2016 arrest. Plaintiff's application to proceed *in forma pauperis* is granted pursuant to 28 U.S.C. § 1915. For the reasons set forth below, Plaintiff's claims against Defendants McAllister, Gonzalez, and McClean, as well as Plaintiff's Sixth Amendment claim, are dismissed. His § 1983 Fourth Amendment claims, based on Plaintiff's unlawful pretrial detention and prosecutorial use of jail telephone recordings allegations, will proceed.

## BACKGROUND

Plaintiff was arrested without a warrant on July 22, 2016 for unspecified charges. (Complaint, Dkt. 1, at ECF[1] 6 ¶ 1.)[2] He arrived at Brooklyn Central Booking ("BCB") at

---

[1] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[2] The facts set forth in this section are based on the allegations in the Complaint, which the Court accepts, as it must, as true for the purposes of this Order. *See Lawrence v. Suffolk Cty.*

approximately 11:00 p.m. on July 22, 2016, but was not arraigned until July 26, 2016 at 4:30 p.m. (*Id.* at ECF 6–8 ¶¶ 2, 10, 13.) While at BCB, Plaintiff refused to submit to an iris scan and DNA sample.[3] (*Id.* at ECF 6 ¶¶ 3–5.) As a result of these refusals, he was subjected to "bullpen therapy" (*id.* at ECF 7 ¶ 6), and his arraignment was postponed repeatedly, resulting in a post-arrest detention of nearly four days (88 hours) (*id.* at ECF 6–8 ¶¶ 2, 10, 13). Plaintiff was ultimately arraigned without submitting to the iris scan or providing a DNA sample. (*Id.* at ECF 8 ¶ 11.) Defendant Acting Justice Lorna McCallister remanded Plaintiff to the Rikers Island Correctional Facility ("Rikers Island"). (*Id.* at ECF 7 ¶ 10.)

While awaiting trial at Rikers Island, Plaintiff's telephone calls were monitored and recorded. (*Id.* at ECF 9 ¶ 5.) Plaintiff knew that his calls were being recorded, but believed that the monitoring and recording was done for security purposes. (*Id.*; *see also id.* (noting that Defendant Josette McClean, a Rikers Island investigator, testified at Plaintiff's trial that inmate phone calls were monitored for security purposes).) However, in addition to the monitoring done by Rikers Island for security purposes, the recordings of Plaintiff's phone calls were also used by the Office of the Kings County District Attorney ("DA's Office") for trial purposes. (*See id.* at ECF 9 ¶ 2 (noting that 14 months after Plaintiff was indicted, he "was handed a disk containing calls [Plaintiff] made at Rikers Island that the office of the Kings County District Attorney was planning to use against Roland at his upcoming trial").) At trial, Plaintiff, proceeding *pro se*,

---

*Police Dep't*, No. 13-CV-2357 (JS) (WDW), 2013 WL 3364344, at *1 (E.D.N.Y. June 28, 2013) (noting that "in reviewing a *pro se* case for *sua sponte* dismissal, a court should assume that all allegations contained in the complaint are true") (citing *Malcolm v. Honeoye Falls Lima Cent. Sch. Dist.*, 517 F. App'x 11, 12 (2d Cir. 2013) (summary order)).

[3] The request for an iris scan forms the basis of Plaintiff's § 1983 claim against Defendant John Doe 1, and the request for a DNA sample forms the basis of Plaintiff's § 1983 claims against Defendants John Does 2 and 3, and "Alexander." (Complaint, Dkt. 1, at ECF 6–7 ¶¶ 3–8.)

learned during his cross-examination of Defendant McClean that the DA's Office had subpoenaed Rikers Island for Plaintiff's recorded phone calls for a three-month period. (*Id.* at ECF 9 ¶¶ 3–4.) Neither Defendant McLean nor the DA's Office knew what information was contained in the calls before they were subpoenaed. (*Id.* at ECF 9 ¶ 4; *see also id.* ("McLean made it clear at [Plaintiff's] trial that her first time listening to the calls was the day of her testimony . . . .").) According to Plaintiff, the DA's Office sent the subpoena after it had sent "a notice of readiness for trial" to Plaintiff's attorney, so that neither Plaintiff nor his attorney were aware of the subpoena being issued. (*Id.* at ECF 10 ¶ 6.) Plaintiff seeks damages. (*Id*. at ECF 11.)

## LEGAL STANDARD

Under the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915A, a district court "shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Upon review, a district court shall dismiss a prisoner's complaint *sua sponte* if the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (noting that under the PLRA, *sua sponte* dismissals of frivolous prisoner complaints are not only permitted but mandatory). Likewise, under 28 U.S.C. § 1915(e)(2)(B), a district court shall dismiss an *in forma pauperis* action where it is satisfied that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

In reviewing a *pro se* complaint, the Court is required to read it liberally and interpret it as raising the strongest arguments it suggests. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "This

is particularly so when the *pro se* plaintiff alleges that [his] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 191 (2d Cir. 2008). Courts must read *pro se* complaints with "special solicitude" and interpret them to raise the "strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–76 (2d Cir. 2006) (internal quotation marks omitted). Moreover, at the pleadings stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations in the complaint." *Kiobel v. Royal Dutch Petrol. Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009)).

However, a complaint must plead enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). Although "detailed factual allegations" are not required, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (quotations and citations omitted). Similarly, a complaint is insufficient to state a claim "if it tenders naked assertions devoid of further factual enhancement." *Id.* (brackets and quotations omitted).

## DISCUSSION

### I. Fourth Amendment Unlawful Pretrial Detention Claim

Plaintiff alleges that Defendants Acting Justice Lorna McAllister, the three John Doe BCB Defendants, and Alexander, a BCB officer, violated Plaintiff's Fourth Amendment rights by delaying his arraignment after Plaintiff refused to submit to an iris scan or provide a DNA sample.

4

(*See* Complaint, Dkt. 1, ECF 6–8 ¶¶ 3–11; *see also id.* at ECF 11.)  Plaintiff brings his Fourth Amendment claim pursuant to § 1983.  (*Id.* at ECF 11.)

### A. Defendant McAllister

Plaintiff names Acting Justice Lorna McAllister as one of the defendants in this matter.  (*Id.* at ECF 4.)  "It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions."  *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009) (citing *Mireles v. Waco*, 502 U.S. 9, 9–10 (1991), and *Forrester v. White*, 484 U.S. 219, 225–26 (1988)).  Plaintiff's claims against Defendant McAllister relate to her role in arraigning Plaintiff.  (*See* Complaint, Dkt. 1, ECF 7 ¶ 10.)  These actions were executed in her capacity as a judicial official.  Furthermore, the absolute judicial immunity of the court and its members "is not overcome by allegations of bad faith or malice," nor can a judge "be deprived of immunity because the action [she] took was in error . . . or was in excess of [her] authority."  *Mireles*, 502 U.S. at 11, 13 (quotations and citations omitted).  Thus, Acting Justice McAllister is entitled to absolute immunity and Plaintiff's claims against her are dismissed.  *See* 28 U.S.C. §§ 1915(e)(2)(B)(iii), 1915A(b)(2).

### B. Defendants City of New York, Alexander, and John Does 1–3

"In the context of pretrial detention, the Supreme Court has held that, when there has been a warrantless arrest, the Fourth Amendment requires a prompt judicial determination of probable cause as a prerequisite to an extended pretrial detention."  *Bryant v. City of New York*, 404 F.3d 128, 136 (2d Cir. 2005); *see also Manuel v. City of Joliet*, 137 S. Ct. 911, 917 (2017) (noting that a claim challenging pretrial detention, based on warrantless arrest and before a finding of probable cause, "fell within the scope of the Fourth Amendment") (citing *Gerstein v. Pugh*, 420 U.S. 103, 106 (1975)).  "[A] jurisdiction that provides judicial determinations of probable cause within 48

hours of arrest will, as a general matter, comply with the promptness requirement . . . ." *Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991). In sum, "[w]hat is constitutionally required is that, except in extraordinary circumstances, the arrestee be given a hearing into probable cause for the arrest within 48 hours." *Bryant*, 404 F.3d at 138. "In New York, because probable cause determinations are made at arraignments, the Fourth Amendment thus requires that an arrestee be arraigned within 48 hours." *Case v. City of New York*, 233 F. Supp. 3d 372, 386 (S.D.N.Y. 2017).

Plaintiff seeks damages under § 1983, alleging that Defendants violated the Fourth Amendment by failing to promptly arraign him. (Complaint, Dkt. 1, ECF 11.) The complaint alleges that Plaintiff was held for four days before he was arraigned (Complaint, Dkt. 1, ECF 6–8 ¶¶ 2, 10, 13) and that his pre-arraignment delays were punishment for his refusal to submit to iris scans and to DNA testing (*id.* at ECF 7 ¶¶ 5–6). Plaintiff further alleges that this conduct was pursuant to "a procedure the Department of Corrections like[s] to call 'BullPen Therapy.'" (*Id.* at ECF 7 ¶ 6.) The Court finds that these allegations plausibly support Plaintiff's claim that his arraignment was unconstitutionally delayed, *Case*, 233 F. Supp. 3d at 386 (finding that the Fourth Amendment requires that an arrestee be arraigned within 48 hours), and that the reason for the delay was punishment, *see Pesola v. City of New York*, Nos. 15-CV-1917 (PKC) (SN), 15-CV-1918 (PKC) (SN), 2016 WL 1267797, at *9 (S.D.N.Y. Mar. 30, 2016) (concluding that, where the plaintiffs alleged that their pre-arraignment delays were punishments for refusing to submit to iris scans, and even though "[t]here may be some set of facts brought out in discovery . . . that makes each delay appear reasonable, . . . [a]t this early stage and on the facts alleged, [the plaintiffs'] excessive detention claims cannot be dismissed"); *Sorensen v. City of New York*, No. 98-CV-3356 (HR), 2003 WL 169775, at *4 (S.D.N.Y. Jan. 23, 2003) (concluding that "[t]he question of whether the City intentionally delayed plaintiff's arraignment is one of intent" and "a question for the trier

of fact"); *see also MacNamara v. City of New York*, 275 F.R.D. 125, 150 (S.D.N.Y. 2011) ("The central and predominant focus of the class action suit is not the mere length of detention for [Republican National Convention ("RNC")] arrestees, but the existence of a policy to detain them longer than would otherwise be required. Such a policy, if proven, would surely demonstrate that the probable cause determinations for individual RNC arrestees were unreasonably and deliberately delayed."); *Case*, 233 F. Supp. 3d at 387. Therefore, the Court will allow this claim to proceed against Defendants City of New York, Alexander, and John Does 1–3.

## II. Trial-Related Claims

Plaintiff alleges that Defendants City of New York, District Attorney Eric Gonzalez,[4] and Rikers Island investigator Josette McClean violated Plaintiff's Fourth and Sixth Amendment rights by using the recordings of Plaintiff's phone calls made while incarcerated at Rikers Island against him at trial. (*See* Complaint, Dkt. 1, ECF 9 ¶¶ 2–5; *see also id.* at ECF 11.) Plaintiff brings his Fourth and Sixth Amendment claims pursuant to § 1983.

### A. Fourth Amendment Claim Against Individual Defendants Gonzalez and McClean

"[I]n order to state a claim for relief under Section 1983 against an individual defendant, a plaintiff must allege the personal involvement of the defendant in the alleged constitutional deprivation." *Lawrence v. Suffolk Cty. Police Dep't*, No. 13-CV-2357 (JS) (WDW), 2013 WL 3364344, at *3 (E.D.N.Y. June 28, 2013) (citing *Farid v. Elle*, 593 F.3d 233, 249 (2d Cir. 2010)). Though Plaintiff alleges that the DA's Office subpoenaed the telephone recordings from Rikers Island and used portions of those recordings at Plaintiff's trial (*see* Complaint, Dkt. 1, at ECF 9 ¶¶

---

[4] The Court assumes that Plaintiff is referring to the current District Attorney for Kings County. *See Brooklyn DA Eric Gonzalez*, THE BROOKLYN DISTRICT ATTORNEY'S OFFICE, http://www.brooklynda.org/eric-gonzalez/ (last visited June 4, 2019).

2–4), he does not specifically allege that Defendant Gonzalez worked on Plaintiff's case or was involved in the decision to subpoena the recordings or use them at trial.[5] Likewise, though Plaintiff appears to allege that Defendant McClean was the Rikers Island official who provided the DA's Office with Plaintiff's telephone recordings (*cf. id.* at ECF 9 ¶ 3 (alleging that Defendant McClean testified about the recordings at trial)), he does not allege that McClean participated in the alleged constitutional deprivation, *i.e.*, the warrantless search of those recordings by the DA's Office and the subsequent use of those recordings at trial. Since neither Gonzalez nor McClean were personally involved in the alleged constitutional deprivation, Plaintiff cannot maintain a cause of action against them. *See Gray-Davis v. Rigby*, No. 14-CV-1490, 2016 WL 1298131, at *5 (N.D.N.Y. Mar. 31, 2016) ("A defendant is 'personally involved' if he 'directly participated in the [allegedly unconstitutional] infraction.'") (quoting *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986)). Therefore, Plaintiff's claims against Defendants Gonzalez and McClean are dismissed.[6] *See* 28 U.S.C. §§ 1915(e)(2)(B)(iii), 1915A(b)(2).

B. **Fourth Amendment Claim Against Municipal Defendant**

Plaintiff alleges that there is a "practice/policy at Rikers" where the telephone recordings of pretrial detainees are provided to the DA's Office for use at trial without a warrant. (Complaint,

---

[5] The Court notes that to the extent Defendant Gonzalez would have supervised the Assistant District Attorney that did prosecute Plaintiff's state court case, § 1983 liability cannot be based on a theory of supervisory liability only. *See Lawrence*, 2013 WL 3364344, at *4 ("A supervisor cannot be liable for damage under Section 1983 solely by virtue of being a supervisor because there is no *respondeat superior* liability under Section 1983."); *see also Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) ("To establish the liability of a supervisory official under § 1983, a plaintiff must show the defendant's personal involvement in the alleged constitutional violations.").

[6] The Court notes that even if the claims against Defendants Gonzalez and McClean were not dismissed for failure to state a claim, it is likely that, upon Defendants' motion before discovery, both Defendants would be entitled to have the claims against them dismissed on the basis of qualified immunity.

Dkt. 1, 10 ¶ 9.) "[A] municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citations omitted); *see also Monell v. Dep't of Soc. Servs. of N.Y.C*, 436 U.S. 658, 690–91 (1978). Though Plaintiff focuses his allegations on the actions of the DA's Office, the proper defendant for such a claim is the City of New York, which Plaintiff has also named in his Complaint. *See Bellamy v. City of New York*, 914 F.3d 727, 757–61(2d Cir. 2019) (holding that the City of New York was the proper defendant for purposes of a *Monell* claim that alleged unconstitutional policies at a district attorney's office).

At first blush, the New York Court of Appeals' recent decision in *People v. Diaz*, 33 N.Y.3d 92 (N.Y. 2019), would appear to preclude Plaintiff's Fourth Amendment claim. *See id.* at 95 ("[A] correctional facility may record and monitor detainees' calls, as well as share the recordings with law enforcement officials and prosecutors, without violating the Fourth Amendment.").[7] However, the case law in this Circuit on this issue is not as clear. Though the Second Circuit has upheld a prison's practice of monitoring and recording its inmates for purposes of institutional security, *see United States v. Willoughby*, 860 F.2d 15, 21 (2d Cir. 1988) ("Although pretrial detainees may have some residual privacy interests that are protected by the Fourth Amendment, the maintenance of prison security and the preservation of institutional order and discipline are 'essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees.'") (quoting *Bell v. Wolfish*, 441 U.S. 520, 546 (1979), and citing *United States v. Cohen*, 796 F.2d 20, 23–24 (2d Cir.

---

[7] Notably, the petitioner in *Diaz* is seeking *certiorari* before the United States Supreme Court. *See* Petition for Writ of Certiorari, *Diaz v. New York* (No. 18-9359).

1986))*,* it has never addressed the question of whether those recordings may then be shared with the prosecutors without a warrant or subpoena, for the purpose of providing evidence for past crimes. Furthermore, the Second Circuit, based on the presumption that pretrial detainees do retain protectable privacy interests, *see Willoughby*, 860 F.2d at 21; *cf. Willis v. Artuz*, 301 F.3d 65, 68 (2d Cir. 2002) ("We decline to extend to convicted prisoners the privacy right secured to pre-trial detainees in *Cohen*."), has struck down searches in similar contexts when the information obtained was collected as trial evidence. *See Cohen*, 796 F.2d at 23–24 (holding that when a pretrial detainee's "effects were searched at the instigation of non-prison officials for non-institutional security related reasons, the validity of the search may be challenged"); *see also United States v. Heatley*, 41 F. Supp. 2d 284, 289 (S.D.N.Y. 1999) (holding that though "applicable regulations permit prison authorities to inspect and read incoming and outgoing mail [to ensure institutional security], that permission is not boundless").

Even to the extent that the prison's recording and monitoring of Plaintiffs' calls was necessary for security purposes, here, Plaintiff has alleged that Rikers Island staff did not listen to the recordings before providing them to the DA's Office. Likewise, though Plaintiff seems to acknowledge that he provided implied consent for the recordings by using the phone despite knowing that his calls could be monitored and recorded for security purposes, the scope of such a consent search would seem to be limited to the prison's stated "security" purpose. *See Heatley*, 41 F. Supp. 2d at 289 (noting a pretrial detainee's consent was limited to the authority that prison officials had to maintain institutional security; "[h]e was not signing away any remnant of protection the law otherwise might have afforded him"); *see also United States v. Robertson*, 239 F. Supp. 3d 426, 446 (D. Conn. 2017) ("'[G]overnment agents may not obtain consent to search on the representation that they intend to look only for certain specified items and subsequently use

10

that consent as a license to conduct a general exploratory search.'") (quoting *United States v. Breit*, 429 F.3d 725, 730 (7th Cir. 2005)).

Given the uncertainty in this area of the law, the Court will not *sua sponte* dismiss Plaintiff's Fourth Amendment claim for failure to state a claim. Furthermore, Defendants are advised that the Court will summarily dismiss any motion to dismiss this claim at this stage of the litigation for the same reason.

C.      **Sixth Amendment Claim**

"The government violates a defendant's Sixth Amendment right to counsel when it uses, as evidence, statements made by the defendant 'which it had deliberately elicited from him after he had been indicted and in the absence of his counsel.'" *United States v. Pannell*, 510 F. Supp. 2d 185, 189 (E.D.N.Y. 2007) (brackets omitted) (quoting *Massiah v. United States*, 377 U.S. 201, 206 (1964)); *see also Fellers v. United States*, 540 U.S. 519, 523–24 (2009) (holding that the Sixth Amendment right to counsel prohibits the use of incriminating statements deliberately elicited from a defendant by government agents). This inquiry "turns on whether the government . . . obtained information by serving as a mere 'listening post' or instead participated 'in active conversations' and prompted 'particular replies' from the defendant." *Pannell*, 510 F. Supp. 2d. at 189 (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 456–59 (1986)). Plaintiff does not allege any facts suggesting that anyone at the DA's Office did anything other than listen to the prison phone recordings before using them at trial, *i.e.*, that the DA's Office did anything other than serve as a mere listening post. Since Plaintiff fails to state a claim that the admission of the telephone

conversations at trial violated his Sixth Amendment rights, this claim is dismissed. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b)(2).[8]

## CONCLUSION

Plaintiff's § 1983 claims against Defendants McAllister, Gonzalez, and McClean are dismissed for failure to state a claim on which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b)(2). No summons shall issue as to those Defendants and the Clerk of Court is directed to amend the caption to reflect their dismissal. Plaintiff's Sixth Amendment claim concerning his criminal trial is also dismissed for failure to state a claim on which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(2).

Plaintiff's Fourth Amendment claims, based on Plaintiff's unlawful pretrial detention and prosecutorial use of jail telephone recordings allegations, shall proceed as to Defendants City of New York, the three John Doe BCB Defendants, and Alexander, the BCB officer, who are said to be involved in the allegedly unlawful detention of Plaintiff from July 22, 2016 to July 26, 2019.

As to Defendants City of New York and Alexander, the Clerk of the Court is directed to issue a summons against each and the United States Marshals Service is directed to serve the complaint and this Order on these defendants without prepayment of fees. As to Defendants John Doe 1 (BCB Officer), John Doe 2 (BCB Officer) and John Doe 3 (BCB Supervisor), pursuant to the holding in *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997) (*per curiam*), the Court requests that the Corporation Counsel of the City of New York ascertain the full names and service address(es)

---

[8] Though ordinarily the Court would allow Plaintiff an opportunity to amend his pleading, *see Cruz v. Gomez*, 202 F.3d 593, 597–98 (2d Cir. 2000), such an opportunity is not warranted here, as it is clear from the face of the complaint that any such amendment would be futile, *see Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [Plaintiff]'s causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.").

of these BCB officers involved in Plaintiff's detention. Corporation Counsel need not undertake to defend or indemnify these individual officers merely because of the issuance of the Order. This Order provides a means by which Plaintiff may name and properly serve the John Doe Defendants.

The Clerk of Court is respectfully requested to mail a copy of this Order along with the complaint to the Corporation Counsel for the City of New York, Special Federal Litigation Division. The case is referred to the Honorable Steven M. Gold, United States Magistrate Judge, for pretrial supervision.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore, *in forma pauperis* status is denied for purposes of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: June 4, 2019
      Brooklyn, New York